UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Liberty Mutual Fire Insurance Company,

    Plaintiff

v.

Acuity A Mutual Insurance Company and Royal Refrigeration, Inc.,

    Defendants

Case No.: 2:24-cv-00684-JAD-DJA

**Order Granting in Part Liberty Mutual's Motion for Summary Judgment and Denying Acuity's Motion for Summary Judgment**

[ECF Nos. 20, 24]

    Royal Refrigeration, Inc., employee Richard Kline fell through the roof of a building owned by YESCO, LLC while performing services on behalf of Royal. When Kline sued YESCO, it tendered the claim to its insurance carrier, Liberty Mutual Fire Insurance Company, who then demanded that Royal's insurer, Acuity A Mutual Insurance Company, indemnify and defend YESCO as an additional insured under Royal's Acuity policy. Acuity declined, so Liberty Mutual filed this action, seeking a declaration that Acuity has a duty to indemnify and defend YESCO against Kline's claims.[1]

    Both insurers now move for summary judgment,[2] and the crux of their dispute is twofold: (1) whether YESCO qualifies as an "additional insured" who is covered by Royal's Acuity policy and (2) whether policy exclusions apply that preclude coverage anyway. I find that none of the exclusions that Acuity relies on apply to this case, so the availability of complete summary judgment turns on the additional-insured issues. Per the policy, YESCO qualifies as an

---

[1] ECF No. 4.

[2] ECF Nos. 20, 24.

additional insured only if Royal agreed in a written contract to add YESCO as an additional insured and, even then, YESCO is an additional insured "only with respect to liability . . . caused, in whole or in part, by" Royal's conduct. I conclude that the Royal–YESCO Independent Contractor Agreement is such a writing and that the facts known to Acuity triggered its duty to defend YESCO from the Kline suit. So Liberty Mutual is entitled to summary judgment in its favor on that theory. But because future developments in the Kline litigation create genuine issues of fact as to whether the duty to indemnify will arise, neither party is entitled to summary judgment on that theory. So I grant in part Liberty Mutual's motion for summary judgment, deny Acuity's, and order the parties to a mandatory settlement conference with the magistrate judge.

## Background

### A. The Royal–YESCO relationship

Royal Refrigeration is a heating, air conditioning, and refrigeration contractor that entered into an Independent Contractor Agreement ("the ICA") with YESCO on February 23, 2020.[3] The agreement states that it would "serve as a master agreement for all projects which YESCO engages Contractor for a period of two (2) years. . . ."[4] Four provisions of the ICA are key here:

> **Section M**, in which Royal warranted that it would keep "in force during the term of" the ICA various insurance coverages including workers' compensation, comprehensive general liability, personal injury, and excess umbrella coverage and "name YESCO" as an additional insured under those policies.[5]

---

[3] ECF No. 24-2 at 90–93.
[4] *Id*. at 93 (Exhibit A).
[5] *Id*. at 91.

  **Section N**, in which Royal agreed "to indemnify, defend, and hold harmless YESCO . . . . from any and all damages, liabilities, costs, losses, or expenses of any kind or nature . . in any way relating to or arising out of any claim, demand, or action arising out of" Royal's "negligent or otherwise wrongful acts or omissions" or Royal's breach of the ICA.[6]

  **Section V**, in which Royal agreed that if Royal "furnishes services or materials to YESCO during the term of the agreement, or after, not pursuant to" the agreement or another contract, "such services" will "be subject to all of the terms and conditions in" the ICA, and "any terms in Exhibit A to" the ICA will "be controlling over any contrary terms in" the ICA.[7]

  **Exhibit A**, which acknowledges that YESCO and Royal "are entering into" the ICA "with the intent and understanding that it will serve as a master agreement for all projects which YESCO engages" Royal "for a period of two (2) years from" February 23, 2020.[8]

Royal obtained workers' compensation, comprehensive general liability (CGL), personal injury, and excess umbrella coverage from Acuity. Certificates evidencing the Acuity CGL coverage expressly list YESCO as an additional insured "per written contract . . . subject to policy terms, conditions and exclusions," for the periods of September 15, 2020, through September 15, 2022,[9] and September 15, 2022, through September 15, 2023.[10] The term "additional insured" is defined in the policy's endorsement CG-2033 R (6-13)[11]:

---

[6] *Id.*

[7] *Id.* at 92 (emphasis added).

[8] ECF No. 24 at 93. Royal signed a new YESCO ICA on March 13, 2023, but the copy in the docket does not appear to have been signed by YESCO. *Id.* at 21. The validity or impact of this 2023 ICA has no bearing on my analysis here.

[9] *See* ECF No. 24-3 at 2, 4.

[10] ECF No. 24-3 at 6. Acuity argues that this certificate covered YESCO only from March 13, 2023, to September 15, 2023. ECF No. 24 at 6. These certificates and their contents do not factor into my summary-judgment conclusions in this order in any way.

[11] ECF No. 20-1 at 119.

> 1. Section II - Who Is An Insured is amended to include as an additional insured:
>
>    a. Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy; and
>
>    b. Any other person or organization you are required to add as an additional insured under the contract or agreement described in paragraph a above.
>
>    Such person or organization is an additional insured only with respect to liability for *bodily injury, property damage* or *personal and advertising injury* caused, in whole or in part, by:
>
>    a. Your acts or omissions; or
>
>    b. The acts or omissions of those acting on your behalf;
>
>    in the performance of your ongoing operations for the additional insured.

**B.     Kline's accident at YESCO**

Royal sent its employee Kline out to a YESCO-owned building to install swamp coolers on March 8, 2023.[12] Kline fell through the building's roof, and he sued YESCO and various Does and Roes in Nevada state court in February 2024, alleging that he had climbed onto the roof at YESCO's request to perform work as a Royal employee, the roof collapsed, and he crashed onto a table below.[13] Kline claims that he suffered a fractured spine, and he blames his injuries on YESCO's negligence and "conscious disregard for [his] safety."[14]

---

[12] Kline alleges that his fall happened on March 7, 2023. *See, e.g.,* ECF No. 20-1 at 56, ¶ 12. But Liberty Mutual and Acuity both give March 8 as the day of injury, so I adopt that date for the purpose of deciding their summary-judgment motions. *See, e.g.,* ECF No. 1 at 2 (the March 8, 2023[,] loss"); ECF No. 20 at 3 ("The Kline March 8, 2023, incident"); ECF No. 24 at 2 ("an accident occurring on March 8, 2023"). Whether the true date is March 7th or 8th is ultimately immaterial to this ruling.

[13] *Id.* at 56, ¶¶ 12–13.

[14] *Id.* at 57–58, ¶¶ 22–27.

4

### C. This Liberty Mutual–Acuity coverage dispute

Liberty Mutual is YESCO's general-liability carrier. When it received Kline's pre-suit demand against YESCO, it tendered the claim to Royal's carrier, Acuity. Liberty Mutual theorized that Royal agreed in the ICA to indemnify and defend YESCO from such a claim and that YESCO is an additional insured under Royal's Acuity policy, which provides coverage for this claim.[15] Liberty Mutual's tender letter also advised that its investigation had determined that Kline is partially to blame for the accident. It recounted that Kline had "entered the roof area alone and without required PPE. He then fell through a skylight to the floor below. Mr. Kline had prior knowledge of subject skylights and should have taken appropriate precautions not to cause his own injuries."[16]

Acuity declined to provide either a defense or indemnification. It explained that to be an additional insured under Royal's policy, YESCO must "have agreed in writing in a contract or agreement" that YESCO be so named.[17] For Royal and YESCO, that agreement was the ICA; but Acuity took the position that because the ICA had just a two-year term that expired more than a year before Kline's accident, there was no such agreement at the relevant time, so YESCO is not an additional insured under Royal's Acuity policy for Kline's claim.[18]

Liberty Mutual responded by filing this declaratory-relief action.[19] In a single cause of action, it seeks judicial declarations that (1) Acuity "has a duty to defend and indemnify"

---

[15] ECF No. 4-3.
[16] *Id*. at 2.
[17] *See* ECF No. 20-1 at 119.
[18] ECF No. 4-4.
[19] ECF No. 1.

5

YESCO "for the claims and damages alleged in the Kline March 8, 2023, loss" and (2) Liberty Mutual has a right to reimbursement for its costs of defending YESCO from Kline's suit.[20]

**D.    The insurers' competing summary-judgment positions**

Both insurers now cross-move for summary judgment.[21] Liberty Mutual seeks validation of its positions that Royal's obligations to YESCO in the ICA remained in effect at the time of Kline's fall, that YESCO is an additional insured under the Acuity policy, and that Acuity has a duty to indemnify and defend YESCO from Kline's claim.[22] Acuity opposes that effort and asks the court to find that the ICA had expired, so YESCO was not an additional insured, and regardless, policy exclusions preclude coverage.[23] The motions are fully briefed.[24]

## Discussion

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[25] The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that

---

[20] ECF No. 4 at 10–11.

[21] ECF Nos. 20, 24.

[22] ECF No. 20 (Liberty Mutual's MSJ). Liberty Mutual also asks the court to declare that "Royal . . . has a duty to indemnify and defend YESCO." ECF No. 20 at 18. But that relief isn't prayed for in the complaint—which seeks declarations only as to Acuity's obligations—so I decline to address that request. *See* ECF No. 4 at 10-11 (praying for "a judicial declaration that ACUITY, on behalf of its insured Royal Refrigeration has a duty to defend and indemnity Liberty Mutual's insured, YESCO pursuant to the indemnity provisions of the" ICA and "a judicial declaration that Liberty Mutual has a right to reimbursement for attorneys' fees, costs, and sums incurred by Liberty Mutual for the purpose of defending YESCO").

[23] ECF Nos. 24, 28 (Acuity's MSJ and response).

[24] This includes supplemental briefing that I ordered about the second half of the "additional insured" definition. *See* ECF Nos. 31–34.

[25] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

6

demonstrate the absence of a genuine issue of material fact.[26] If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue for trial.[27] "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both motions before ruling on each of them."[28]

### A. YESCO qualifies as an additional insured under the Acuity policy, triggering Acuity's duty to defend YESCO from Kline's suit.

There are two parts to the "additional insured" definition found in Endorsement CG-2033 R (6-13) of the Acuity policy. The first half of the provision states that an additional insured includes "Any . . . organization for whom you are performing operations when you and such . . . organization have agreed in writing in a contract or agreement that such . . . organization be added as an additional insured on your policy. . . ."[29] The second half narrows or clarifies the additional-insured coverage by stating that it only applies to such damages "caused . . . by" Royal's "acts or omissions" or "[t]he acts or omissions of those acting on [Royal's] behalf."[30]

---

[26] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[27] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

[28] *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two,* 249 F.3d 1132, 1134 (9th Cir. 2001)).

[29] ECF No. 20-1 at 119.

[30] *Id*.

### 1. *Royal had a continuing contractual obligation under the ICA to make YESCO an additional insured.*

Liberty Mutual takes the position that the ICA satisfies the first half of this definition. That contract, it argues, "expressly and unambiguously requires Royal Refrigeration to obtain an insurance policy and name YESCO as an additional insured."[31] Acuity responds that the ICA can't supply that hook because it terminated by its express terms more than a year before Kline's accident.[32] "Significantly," it says, "the Acuity Policy's coverage of any additional insured requires a written contract that remains in effect when a loss occurs."[33]

Acuity's argument ignores the continuing nature of Royal's obligation to obtain additional-insured coverage for YESCO even after the ICA's expiration. Section V of the ICA expressly contemplates that Royal would perform work for YESCO beyond the two-year term, and it extends the contract's obligations to any such work:

> In the event [Royal] furnishes services or materials to YESCO during the term of this agreement, *or after*, not pursuant to this agreement or another written agreement between the parties, such services and materials so provided shall be subject to all of the terms and conditions in this agreement. The terms of this agreement shall control over any conflicting provision in a purchase order, work authorization, or similar document issued in furtherance of this agreement; provided, however, that any terms in Exhibit A to this agreement shall be controlling over any contrary terms in this agreement.[34]

---

[31] ECF No. 20 at 2.

[32] ECF No. 28 at 3.

[33] *Id*. More significantly, Acuity doesn't cite to any policy language or case law to support the notion that the contract must "remain[] in effect when [the] loss occurs."

[34] ECF No. 24-2 at 92, § V (emphasis added).

8

Under this provision, Royal unambiguously had a continuing obligation to name YESCO as an additional insured for any services it performed for YESCO "after" the two-year term of the ICA.

In an effort to avoid the continuing nature of this obligation, Acuity highlights the clauses in the ICA and its Exhibit A that provide, respectively, that "any terms in Exhibit A . . . shall be controlling over any contrary terms in" the ICA[35] and that "[i]n the event of a conflict between this Exhibit A and the [ICA], this Exhibit A shall be controlling."[36] Because Exhibit A says that the contract "will serve as a master agreement for all projects which YESCO engages [Royal] for a period of two (2) years," Acuity argues that this is a two-year termination date that ended any continuing obligations in the ICA.[37]

Whether this two-year term in Exhibit A even is a termination date for the ICA is not clear. It doesn't say that the ICA terminates after two years; it says that the parties understand that the ICA "will serve as a master agreement for all projects which YESCO engages [Royal] for a period of" two years. But even if I find that this language supplies a two-year end date for the ICA, this term would not "conflict" with or be "contrary to" the "Continuing Effect" language in § V, which addresses the parties' continuing obligations "after" "the term of this agreement. . . ."[38] The provisions are entirely harmonious: the ICA may have terminated in February 2022, but Royal's contractual obligation to make YESCO an additional insured in its CGL policy continued to apply to any services that Royal provided YESCO after that term. As the Nevada Supreme Court has recognized, when "a contract has expired, the parties generally

---

[35] *Id*.

[36] *Id*. at 93.

[37] *Id*.

[38] *Id*. at 92, § V.

9

are 'released from their respective contractual obligations.' However, an exception exists . . . where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.'"[39] And "when the language of a contract clearly provides that the contract is to have a perpetual duration, the courts must enforce the contract according to its terms."[40]

So when Royal sent Kline to install swamp coolers for YESCO in March 2023, there was an operative agreement in writing that YESCO be added as an additional insured on Royal's CGL policy for that work. There is no genuine dispute that the first half of the "additional insured" definition in the Acuity policy is thus satisfied here.

### 2. Acuity's duty to defend was triggered because there is the potential that Kline is alleging YESCO's liability for bodily injury caused in part by the acts or omissions of Royal or Kline himself.

Whether the second half of the "additional insured" definition is satisfied is a bit trickier. The answer to that question is heavily influenced by the legal standards that apply to an insurer's duties under Nevada law.

An insurer's duty to provide a defense against a claim is the broadest of the duties imposed on an insurance carrier. This duty arises "whenever [the insurer] ascertains facts which give rise to the potential of liability under the policy."[41] That potential "exists when there is

---

[39] *Granite Constr. Co. v. Remote Energy Sols., LLC*, 403 P.3d 683, at *2 (Nev. 2017) (unpub.) (quoting *Litton Fin. Printing Div. v. Nat'l Lab. Rels. Bd.*, 501 U.S. 190, 206 (1991)).

[40] *Bell v. Leven*, 90 P.3d 1286, 1288 (Nev. 2004).

[41] *United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.*, 99 P.3d 1153, 1158 (Nev. 2004) (quoting *Gray v. Zurich Ins. Co.*, 419 P.2d 168, 177 (Cal. 1966)). Importantly, the Nevada Supreme Court has repeatedly held that "a duty to defend is owed[] whenever 'the allegations in the third party's complaint show that there is arguable or possible coverage,' or when the insurer 'ascertains facts which give rise to the potential of liability under the policy.'" *Zurich Am. Ins. Co. v. Ironshore Specialty Ins. Co.*, 497 P.3d 625, 631 (Nev. 2021) (quoting *Nautilus Ins. Co. v. Access Med.*,

arguable or possible coverage."[42]  "If there is any doubt about whether the duty to defend arises, this doubt must be resolved in favor of the insured.  The purpose behind construing the duty to defend so broadly is to prevent an insurer from evading its obligation to provide a defense for an insured without at least investigating the facts behind a complaint."[43]

The second half of the policy's "additional insured" definition clarifies the additional-insured coverage by stating that it only applies to damages "caused, in whole or in part, by" Royal's "acts or omissions" or "[t]he acts or omissions of those acting on [Royal's] behalf."[44]  Courts interpreting this language have found that it "intended coverage for additional insureds to extend to occurrences attributable in part to acts or omissions by both the named insured and the additional insured."[45]  "The lesson of these cases," one district judge has surmised, "is that it doesn't take much for an underlying complaint to trigger a policy's additional-insured coverage, but there must be some fact alleged, if only indirectly, that potentially brings the underlying lawsuit within the scope of the policy."[46]

So in *Pro Con, Inc. v. Interstate Fire & Casualty Company*, for example, the district court granted summary judgment in favor of the additional insured on the duty to defend.  Pro Con was the general contractor on a jobsite.[47]  Subcontractor CCS sent an employee to perform

---

*LLC*, 482 P.3d 683, 687 (Nev. 2021)).  So in Nevada, the duty to defend is triggered by facts in the underlying complaint or learned elsewhere.

[42] *Id*.

[43] *Id*.

[44] *Id*.

[45] *Pro Con, Inc. v. Interstate Fire & Cas. Co.*, 794 F. Supp.2d 242, 256–57 (D. Maine 2011) (emphasis omitted) (collecting cases).

[46] *Specialty Ins. Co. v. Raincoat Roofing Sys., Inc.*, 590 F. Supp.3d 1148, 1156 (N.D. Ill. 2022) (cleaned up).

[47] *Pro Con*, 794 F. Supp.2d at 245.

11

work at that jobsite, and he was injured in the course of that work.  While the employee sued only Pro Con, alleging that it was negligent and failed to maintain the premises in a safe condition, the court found that Pro Con was potentially an additional insured under language identical to Acuity's because the employee's allegations "establish[ed] that the injury arose out of CCS's operations performed for Pro Con," so there was "the potential that facts might be developed at trial that would result in the fact finder determining that" the employee's "bodily injuries were caused, at least in part by, the acts or omissions of CCS (or its agents) in the performance of these operations."[48]  "The insurer must defend if there is any possibility that its policy might provide coverage," the court reasoned.[49]  "As these allegations potentially implicate the named insured CCS," they were "sufficient to trigger" the carrier's duty to defend.[50]

        Similarly here, Kline's complaint names only YESCO as the tortfeasor, but there are allegations that potentially implicate named insured Royal.  The complaint's allegations establish that Kline was not employed by YESCO and was lawfully on its premises when he was asked to go to the roof of the premises.[51]  Kline also sues "DOES Defendants I through X and ROE BUSINESS ENTITIES Defendants I through X," whom he alleges are "negligently or otherwise responsible in some manner for the acts, events, circumstances, and happenings complained of"

---

[48] *Id*. at 257.

[49] *Id*. at 257–58.

[50] *Id*. at 258.

[51] ECF No. 20-1 at 56.  Acuity was also on notice that Liberty Mutual's investigation "determined that" Kline was partially responsible for the accident. *See* ECF No. 4-3 at 2 ("Mr. Kline was very familiar with th[ese] premise[s] as he had done work there before.  On this day, Mr. Kline walked the premise[s] inside and out before climbing onto the roof.  He entered the roof area alone and without required PPE.  He then fell through a skylight to the floor below.  Mr. Kline had prior knowledge of subject skylights and should have taken appropriate precautions not to cause his own injuries.").  So there is also the potential that a factfinder could determine that the injury was caused "in whole or in part, by . . . [t]he acts or omissions of those acting on [Royal's] behalf," i.e., Kline.

in the complaint and "actually and proximately thereby caused" Kline's injuries.[52] He asserts a negligence per se claim against "Defendants, and each of them," thus targeting not just YESCO, but these Does and Roes, too, which could potentially include Royal.[53] Acuity was also on notice from pre-suit demands that this event happened while Kline was providing services to YESCO on behalf of Royal.[54] So just as in *Pro Con*, this complaint gives rise to the potential that additional-insured coverage exists. That potential triggered Acuity's duty to defend YESCO against Kline's suit under Nevada law. Liberty Mutual is thus entitled to summary judgment in its favor on Acuity's duty-to-defend theory.

### 3.  *Genuine issues of material fact preclude summary judgment for either side on the duty to indemnify.*

Less broad than the duty to defend is an insurance carrier's duty to indemnify. It "arises when an insured 'becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy.'"[55] In other words, for an insurer to be obligated to indemnify an insured, "the insured's activity and the resulting loss or damage must actually fall within the CGL policy's coverage."[56] While the duty to defend depends on the underlying complaint forecasting a possibility of coverage, the duty to indemnify "is controlled by the facts proven in the underlying suit."[57]

---

[52] ECF No. 20-1 at 55.

[53] *See id.* at 59.

[54] *See* ECF Nos. 4-3, 4-4.

[55] *United Nat'l Ins. Co.*, 99 P.3d at 1157 (quoting *Zurich Ins. Co. v. Raymark Indust.*, 514 N.E.2d 150, 163 (Ill. 1987)).

[56] *Id.* at 58 (quoting *Outboard Marine v. Liberty Mut. Ins.*, 607 N.E.2d 1204, 1221 (Ill. 1992)).

[57] *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 601 (5th Cir. 2011). *See also Century Sur. Co. v. Andrew*, 432 P.3d 180, 183 (Nev. 2018) ("The duty to indemnify provides those

It remains to be seen whether developments in the underlying case will shake out in a way that YESCO will ultimately qualify as an additional insured under the Acuity policy's definition. That case remains in the discovery phase.[58] Discovery, motion rulings, and any ultimate judgment may result in a basis to conclude that Royal or Kline "caused, in whole or in part" Kline's injuries[59]; but they also may not. Kline could also lose his case, leaving no judgment for which indemnification would be needed. So it cannot yet be determined whether Acuity will have a duty to indemnify YESCO for the Kline claim.[60] Summary judgment is thus not available to either side on Acuity's duty to indemnify.

**B.    The exclusions don't apply.**

Acuity alternatively argues that even if YESCO could qualify as an additional insured, three policy exclusions preclude coverage for Kline's claim: the workers' compensation exclusion, the contractual-liability exclusion, and the employer's liability exclusion. In Nevada, courts must "broadly construe any clauses that provide coverage and narrowly construe any clauses that exclude coverage."[61]

---

insured financial protection against judgments, while the duty to defend protects those insured from the action itself.").

[58] *See Kline v. YESCO, LLC*, Case No. 2:24-cv-750-JAD-DJA. I take judicial notice of the status of this case, which was removed from state court and is also pending before me.

[59] Liberty Mutual provided an inspection report from the State of Nevada Department of Business and Industry Division of Industrial Relations Occupational Safety and Health Administration that found various OSHA safety violations by Royal related to the Kline incident. *See* ECF No. 32-1.

[60] The posture of the underlying case may create a ripeness problem for this claim. *See e.g., Knittle v. Progressive Cas. Ins. Co.*, 908 P.2d 724, 726 (Nev. 1996) (finding that declaratory relief claim that was filed before judgment was obtained in the underlying suit was unripe). But because neither side briefs this issue, I do not address it.

[61] *Deutsche Bank Nat'l Tr. Co. v. Fid. Nat'l Title Ins. Co.*, 536 P.3d 915, 922 (Nev. 2023).

The workers' compensation exclusion is easily dispensed with. It excludes coverage for "[a]ny obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law."[62] The record does not support the notion that Kline's claims for which YESCO seeks coverage are brought under workers' compensation, disability benefits, or unemployment compensation law; they are negligence claims, brought under tort law.[63] Indeed, the declaration of Laura Gonyaw in support of Acuity's summary-judgment motion reflects that "the workers' compensation carrier had been notified of [Kline's] claim and was responding,"[64] suggesting that Kline's workers' compensation claim is proceeding under a different policy than this one. Thus, the workers' compensation exclusion plainly does not apply to additional-insured coverage owed to YESCO for Kline's suit against it.

The exclusions for contractual and employer liability don't apply under a plain reading of the policy when we consider that "the insured" who is being referenced for purposes of Kline's claim against YESCO is YESCO, not Royal. Courts applying insurance agreements to additional insureds have held that "the obvious reading of 'the insured' is 'the insured seeking coverage,' which, depending on the circumstances of each particular claim, could be a named insured or an additional insured."[65] Interpreting "the insured" in these exclusions to mean YESCO is also consistent with the fact that the policy contains a separation-of-insureds provision that states that "this insurance applies . . . [s]eparately to each insured against whom claim is made or suit is brought."[66]

---

[62] ECF No. 24-2 at 10 (exclusion d).

[63] *See* ECF No. 20-1.

[64] ECF No. 24-1 at 3, ¶ 8.

[65] *James McHugh Const. Co. v. Zurich Am. Ins. Co.*, 927 N.E.2d 247, 252 (Ill. 2010).

[66] ECF No. 24-2 at 20 (Section IV (7)). *See Endurance Amer. Specialty Ins. Co. v. Century Sur. Co.*, 46 F. Supp. 3d 398, 416 (S.D. N.Y. 2014) ("Separation of insured provisions require that

So the exclusion of coverage for bodily injury to "[a]n employee of [YESCO]"[67] isn't triggered here because there is no evidence in the record to suggest credibly that Kline was an employee of YESCO, not Royal. This reading makes sense because the employer's liability exclusion "is used in general liability policies to avoid duplication of an employer's workers' compensation insurance by excluding coverage for claims by an injured employee against his own employer."[68] Similarly, the exclusion for "[b]odily injury or property damage for which [YESCO] is obligated to pay damages by reason of the assumption of liability in a contract or agreement"[69] doesn't apply here because YESCO's alleged liability to Kline does not arise from a contractual assumption of liability.[70] Rather, Kline's claims against YESCO are tort claims

---

each insured 'be treated as if separately covered by the policy and indeed as if he (additional insured) had a separate policy of his own.'").

[67] ECF No. 24-2 at 10 (exclusion e)

[68] *See Endurance Amer. Specialty Ins. Co.*, 46 F. Supp. 3d at 415.

[69] *Id*. (exclusion b).

[70] Liberty Mutual points out that the employer's liability and contractual-liability exclusions expressly state that they don't apply to liability "assumed" by the insured in "an insured contract." *See id*. at exclusions b (2) & e. It argues that the ICA contains such an assumption and is an insured contract. ECF No. 30 at 7–8. The policy defines an "insured contract" as "[t]hat part of [a] contract or agreement pertaining to your business under which you assume the tort liability of another party to pay for bodily injury or property damage to a third person or organization." ECF No. 24-2 at 21, § V (9) (f). I find that the ICA qualifies as an "insured contract" under this definition because the indemnification provision in § N of the ICA broadly contains Royal's promise to indemnify YESCO for "any and all damages . . . of any kind or nature . . . in any way relating to or arising out of any claim, demand, or action arising out of [Royal's] negligent or otherwise wrongful acts or omissions . . . in connection with the performance" of Royal's work for YESCO. ECF No. 24-2 at 91, § N. I reject Acuity's argument that the ICA can't be an "insured contract" because it expired after two years based on language in Exhibit A, *see supra* at pp. 9–10, because § N expressly states that Royal's "obligations in this paragraph shall survive the termination of this agreement until any such claims or actions are fully barred by the applicable statute of limitations." ECF No. 24-2 at 91, § N. So, if instead these exclusions should be read to refer to Royal as the insured, they don't bar coverage because Royal can be said to have assumed YESCO's liability under this insured contract.

16

without a contractual underpinning. I thus conclude that the exclusions that Acuity points to do not preclude coverage for YESCO to the extent that it otherwise exists.

### Conclusion

The record in this case supports the entry of partial summary judgment on Liberty Mutual's declaratory relief claim. The provisions in the ICA that qualify YESCO as an additional insured under Royal's Acuity policy were continuing obligations, so even if Exhibit A can be interpreted as a two-year termination date for the ICA, those provisions survived. While it remains to be seen whether Kline's injuries were caused "in whole or in part" by his acts or Royal's such that genuine issues of fact preclude summary judgment as to Acuity's duty to indemnify YESCO for any ultimate judgment in the underlying case, the information known to Acuity triggered its broader duty to defend YESCO from Kline's claims. And the three exclusions that Acuity relies on don't bar coverage. So Liberty Mutual is entitled to summary judgment in its favor on its duty-to-defend theory.

IT IS THEREFORE ORDERED that Liberty Mutual's motion for summary judgment **[ECF No. 20] is GRANTED in part and DENIED in part**; it is granted as to the duty to defend but denied as to the duty to indemnify. Acuity's motion for summary judgment **[ECF No. 24] is DENIED.** This case will proceed to trial on the duty-to-indemnify portion of Liberty Mutual's declaratory relief claim only; the issues related to the duty to defend, the workers' compensation exclusion, the contractual-liability exclusion, and the employer's liability exclusion are resolved by this order.

IT IS FURTHER ORDERED that **this case is REFERRED to the magistrate judge for**

a mandatory settlement conference.  The parties' obligation to file a joint pretrial order is **STAYED** until 10 days after that settlement conference.

_____
U.S. District Judge Jennifer A. Dorsey
June 26, 2025

18